UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:09-CR-20 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| JIMMY L. GODDARD | ) | |

**MEMORANDUM**

Before the Court is the Government's motion for an entry of order of garnishment against assets held by Benton Bancshares, Inc. ("BBI") on behalf of Defendant Jimmy L. Goddard ("Defendant") and his wife, Mary Ellen Goddard ("Mrs. Goddard") (Court File No. 48). Mrs. Goddard intervened and responded in opposition to the Government's motion (Court File No. 50). The Government then filed a reply (Court File No. 53). On June 30, 2010, the Government and Mrs. Goddard presented oral arguments on this motion.

For the following reasons, the Court will **GRANT IN PART** the Government's motion (Court File No. 48), insofar as the Court will enter an order of garnishment as to one-half of the assets identified by BBI in its answer to the application for writ of garnishment (Court File No. 30).

**I.  BACKGROUND**

Defendant, a former bank president, was convicted of misapplication of bank funds following a guilty plea. On October 22, 2009, the Court ordered Defendant to pay $1,185.328.00 in restitution, pursuant to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A (Court File No. 25).

On January 21, 2010, the Government filed two applications for writ of garnishment on BBI against Defendant's property (Court File Nos. 26, 27). On February 16, 2010, BBI filed a single

affidavit and answer to these applications (Court File No. 30). The answer identified the assets which are at issue here.

These assets fall into three categories: 1) approximately $1,100 in cash; 2) $110,536.96 in proceeds from the liquidation of BBI for stock owned by Defendant and Mrs. Goddard; and 3) an estimated $63,510 to $95,265 in future stock dividends to be paid out within the next 36 months on that same stock (*id.*) (collectively, "BBI assets").

On February 25, 2010, Mrs. Goddard intervened and filed a motion to quash the writ of garnishment (Court File No. 34). Initially, Mrs. Goddard argued these assets were exempt from the Court's restitution order, because they were held by both Defendant and Mrs. Goddard in a tenancy by the entirety. The Government responded, arguing property held in a tenancy by the entirety is subject to Defendant's restitution obligation under the MVRA (Court File No. 38). Mrs. Goddard replied, in which she conceded a restitution order under the MVRA has the same nature as a tax lien, and, under Tennessee and federal law, a tax lien can be asserted against marital property held in a tenancy by the entirety (Court File No. 40 at 1). In other words, Mrs. Goddard withdrew her objection to the writ of garnishment by acknowledging the Government had some interest in the assets. Mrs. Goddard argued, however, the Government is only entitled to a portion of the jointly held assets, rather than their entire sum. She proposed dividing up the assets based on either an equitable one-half split or based upon the life expectancy of her and her husband, as a measure of the value of the right of survivorship (*id.* at 2-3).

On March 30, 2010, the Court denied Mrs. Goddard's motion to quash the writ of garnishment, noting Mrs. Goddard had conceded the Government had at least some interest in the property (Court File No. 42). The Court declined, however, to determine at that time the extent of

the Government's interest, as the Government had not yet conducted discovery on the nature of the assets (*id.*). In the present motion, the Court must now answer this question.

## II. DISCUSSION

In the present motion, the Government seeks 100% of the BBI assets (*id.*). Mrs. Goddard opposes to the Government's motion, asserting claim to a portion of the assets (Court File No. 50). Because the parties agree the assets are held in a tenancy by the entirety (*id.* at 1-5; Court File No. 53), Mrs. Goddard argues the Government is only entitled to that portion of the assets in which Defendant has an individual interest (*id.* at 6-9). In her written arguments, Mrs. Goddard advocated for a straightforward one-half division of the assets (Court File No. 50). At oral argument, she advocated for a more nuanced approach, which would take into account the differences in Defendant's and Mrs. Goddard's right of survivorship.

For the reasons below, the Court concludes the BBI assets must be divided equally between the Government and Mrs. Goddard.

### A. Restitution Reaches Entireties Property

The Mandatory Victims Restitution Act ("MVRA") allows a federal court to order a defendant to make restitution, in addition to any sentence imposed. *See* 18 U.S.C. § 3663A(a)(1)(A). The MVRA grants the Government authority to enforce victim restitution orders in the same manner it recovers fines and by all other available means. 18 U.S.C. § 3664(m)(1)(A)(i)–(ii). Pursuant to 18 U.S.C. § 3613(c), once restitution is ordered, all of the defendant's property becomes subject to a lien in favor of the United States. In addition, for purposes of debt collection, such a lien is treated like a tax lien. § 3613(c). Thus, "any property the

3

IRS can reach to satisfy a tax lien, a sentencing court can also reach in a restitution order." *United States v. Hosking*, 567 F.3d 329, 335 (7th Cir. 2009); *see also United States v. Kollintzas*, 501 F.3d 796, 802 (7th Cir. 2007) ("Liens to pay restitution debts are treated like tax liens, so that they are 'effective against every interest in property accorded a taxpayer by state law.'").

Under the Internal Revenue Code, pursuant to 26 U.S.C. § 6321, the United States may place "a lien in favor of the United States on all property and rights to property, whether real or personal, belonging to such person." According to the Supreme Court, the breadth of this statute "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985) (citations omitted). More specific to this case, the Supreme Court has also held § 6321 tax liens may attach to property owned by a delinquent taxpayer and his or her spouse as tenants by the entireties. *United States v. Craft*, 535 U.S. 274, 288 (2002).

In *Craft*, a husband failed to pay property taxes for a number of years, resulting in a tax assessment of $482,446. At the time the government's lien attached, the husband and wife owned real property as tenants by the entireties. The Court considered whether the government's lien could attach to this property:

> Whether the interests of respondent's husband in the property he held as a tenant by the entirety constitutes "property and rights to property" for the purposes of the federal tax lien statute, 26 U.S.C. § 6321, is ultimately a question of federal law. The answer to this federal question, however, largely depends upon state law. The federal tax lien statute itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law. Accordingly, we look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of the federal tax lien legislation.

*Id.* at 278 (citations and internal quotations omitted). The Court reviewed Michigan's law on

tenancies by the entirety and determined each spouse possesses "property and rights to property" for purposes of § 6321. *Id.* at 282-85. Thus, the Court held, federal tax liens may attach to one spouse's interest in entireties property. *Id.* at 288. However, the Court left to the Sixth Circuit to determine, on remand, the proper valuation of each spouse's interest. *Id.* at 289 ("We express no view as to the proper valuation of respondent''s husband's interest in the entireties property."). Because the parties in *Craft* subsequently settled, the method of valuating each spouse's interest remained undecided.

In this case, the Government and Mrs. Goddard both agree Defendant's interest in the BBI assets are subject to the Court's restitution order. In addition, both agree these assets are owned by Defendant and Mrs. Goddard as tenants by the entireties. Thus, the preliminary steps identified in *Craft* are satisfied. The only outstanding question is how to value Defendant's interest.

**B. Methods of Valuating an Interest in Entireties Property**

Because the parties in *Craft* settled the issue before the case was remanded, the valuation question remains an issue of first impression in this circuit. In addition, as recently noted by the Eastern District of Michigan, the question remains unsettled across the federal judiciary. *See United States v. Barczyk*, No. 09-10881, 2010 WL 1068100, at *9 (E.D. Mich. Mar. 24, 2010) ("[W]hile some patterns do emerge, there is no consensus on how to value spousal interests in joint tenancies.").[1] There are two methods which have been adopted by other courts. The first method looks to each spouse's respective life expectancy to calculate the economic value of each spouse's right of survivorship in entireties property. The second method ignores the right of survivorship and

---

[1] The opinion in *Barcyzk* contains a thoroughly researched analysis of this issue, and, though it is unpublished, the Court finds it highly persuasive authority as a concise statement of the law from this circuit.

5

recognizes each spouse as holding a one-half interest.

### 1. Life Expectancy

The first method attempts to factor a couples' rights of survivorship into their respective interests in entireties property. *See, e.g.*, *In re Murray*, 318 B.R. 211, 214 (Bankr. M.D. Fla. 2004) ("Despite its administrative inconvenience, . . . the value of a debtor's interest in tenancy by the entireties property must be determined by reference to joint life actuarial tables"); *Basher v. United States (In re Basher)*, 291 B.R. 357, 364-66 (Bankr. E.D. Pa. 2003) (holding that dividing the value of entireties property in half would not account for each spouse's survivorship interest).

This approach is rooted in dicta found in a pre-*Craft* Supreme Court opinion, which suggested a spouse's interest in a right of survivorship is the "exact economic equivalent of a life estate." *See United States v. Rodgers*, 461 U.S. 677, 698-99 (1983). In *Rodgers*, a delinquent taxpayer and his wife owned property under Texas's homestead law which provided each spouse a separate and undivided possessory interest in property. *Id.* at 685, 687. The Government sought to foreclose on the property to satisfy a tax debt. *Id.* at 687-88. The wife argued foreclosure was not permitted because she continued to hold a homestead interest in the property. *Id.* The Supreme Court held the federal tax lien could attach to the property, but if the property were to be sold, the wife must be compensated for her interest in the property from the foreclosure sale proceeds. *Id.* at 680. On the issue of compensation, the Court stated:

> The exact method for the distribution required by [the tax foreclosure] is not before us at this time. But we can get a rough idea of the practical consequences of the principles we have just set out. For example, if we assume, *only for the sake of illustration*, that a homestead estate is the exact economic equivalent of a life estate, and that the use of a standard statutory or commercial table and an 8% discount rate is appropriate in calculating the value of that estate, then three nondelinquent surviving or remaining spouses, aged 30, 50, and 70 years, each holding a homestead estate, would be entitled to approximately 97%, 89%, and 64%, respectively, of the

6

proceeds of the sale of their homes as compensation for that estate.

*Id.* at 698-99 (emphasis in original).

The Ninth and Fifth Circuits have lent their support to this second camp. *See Pletz v. United States (In re Pletz)*, 221 F.3d 1114, 1117-18 (9th Cir. 2000) (holding debtor spouse's interest in entireties property included both possessory interest and survivorship interest, requiring reference to joint-life actuarial tables); *Harris v. United States*, 764 F.2d 1126, 1130-31 (5th Cir. 1986) (using joint-life tables to calculate interests in homestead property under Texas law); *United States v. Molina*, 764 F.2d 1132, 1133 (5th Cir. 1985) (same); *see also United States v. Baran*, 996 F.2d 25, 28 (2d Cir. 1993) (using life expectancy to value a life estate).

In *Pletz* a delinquent taxpayer argued the IRS was limited to placing a lien on his right of survivorship, because Oregon law limited a creditor to seizing the debtor spouse's survivorship interest. 221 F.3d at 1118. The Ninth Circuit concluded under federal law the IRS was entitled to both the debtor's possessory interest and his survivorship interest. *Id.* Relying on Oregon law, the Ninth Circuit compared the rights of the IRS in collecting a tax debt to a judgment creditor. In Oregon, "the only right that could be obtained by a judgment creditor at an execution sale would be that of the debtor's survivorship interest in property held as a tenancy by the entirety." *Pletz*, 221 F.3d at 1118 (citing *In re Odegaard*, 31 B.R. 718, 720 (Bankr. D. Or. 1983)). This is because the judgment creditor has no right to force an execution sale of the nondebtor spouse's interest nor co-occupy the residence with the nondebtor spouse. *Id.* In contrast the Ninth Circuit noted under federal law the IRS is explicitly allowed "to sell not only a debtor's interest in a property, but the entire property held as a tenancy by the entirety by the debtor and his nondebtor wife." *Id.* (citing 26 U.S.C. § 7403). Thus, the court reasoned the IRS is entitled to the value of the possessory

7

interest under federal law and to the value of the survivorship interest under state law. *Id.*

### 2. *Equal Shares*

In contrast to the first method, the second valuation method is relatively straightforward, simply valuing the interests of each spouse equally. The Third Circuit is firmly within this camp. *See Popky v. United States*, 419 F.3d 242, 245 (3d Cir. 2005). According to the Third Circuit, drawing on the holding of *Craft*, the appropriate measure of the spouse's interest is defined under state law. In *Popky*, the Third Circuit looked to law Pennsylvania as the state giving substance to the parties' property rights. The Third Circuit determined Pennsylvania granted equal interests to a married couple in jointly owned property: "Valuing the interests of tenants by the entireties equally accords with the longstanding Pennsylvania common law definition of tenancies by the entirety." *Id.* (citations omitted). The Third Circuit concluded "the equal division of assets between spouses . . . parallels the distribution of entireties property when an entireties estate is severed because of a sale with consent of both tenants, divorce or other reasons." *Id.*

This reasoning has been applied by several other district courts, including the Eastern District of Michigan. *See Barczyk*, 2010 WL 1068100, at *8 (collecting cases). *Barcyzk* decided upon this method for three reasons. First, it avoids "the uncertainty inherent in calculating survivorship interests." *Id.* As the district court in *Popky* observed, the actuarial "approach relies on speculative prediction that both spouses will have an average life span[,] and it neither accounts for the health of the spouses nor for the likelihood of divorce or sale of the property . . . ." *Popky v. United States (Popky I)*, 326 F. Supp. 2d 594, 603 (E.D.Pa. 2004). Second, it avoids inequitable results which could result if the nondebtor spouse is also the elder spouse, who in such a case would be doubly harmed by first losing the property through no fault of his own and then by receiving a smaller share

of the proceeds based upon his age. *Barczyk*, 2010 WL 1068100, at *10. Third, *Barczyk* concluded an equal split comports with Michigan state law concerning the dissolution of tenancies by the entireties. *Id.* (citing cases). In Michigan, as in most states, a divorce results in "giving each spouse an equal interest in the property as a tenant in common, unless the divorce decree specifies otherwise." *Id.* (quoting *Craft*, 535 U.S. at 282; Mich. Comp. Laws § 552.102); *see also Hicks v. Boshears*, 846 S.W.2d 812, 818 (Tenn. 1993) ("At common law and in Tennessee, divorce converts a tenancy by the entirety into a tenancy in common.") (citing C. Moynihan, *Introduction to the Law of Real Property* 232 (1962)).

*Barcyzk* went on to caution, however, that equal valuation will not always be the most equitable alternative. *Id.* Referencing Michigan divorce law, the district court noted the rule for equal valuation was only a "default rule." *Id.* "If the equities favor a different solution, a court may 'make such division between [the spouses] as it deems equitable and just." *Id.* (citations omitted).

### C. Equal Shares Method Applied

Because the Sixth Circuit has not yet decided between these two methods, the Court must choose between opposing sets of persuasive authority. After careful consideration, this Court concludes Defendant and Mrs. Goddard are entitled to equal shares of the property, notwithstanding any differences in their life expectancies.

*Craft* provides two tenets which guide this issue. First, Congress has intended the Government's reach in satisfying tax liens and restitution orders "to reach every property interest that a taxpayer might have." *Craft*, 535 U.S. at 283. Second, though what property may be garnished is a question of federal law, it is state law which creates and defines the scope of an individual's right to a property interest. *Id.* at 278. By their nature, these two tenets conflict in the

9

context of entireties property. Under state law, a single spouse has no individual interest in entireties property, other than his individual right of survivorship. *See Craft*, 535 U.S. at 292 (Thomas, J., dissenting) ("[P]roperty held as a tenancy by the entirety does not belong to either spouse, but to a single entity composed of the married persons.") This lack of individual title conflicts with the Government's mandate to garnish all of a debtor spouse's property interests. Though he may have no individual title to the property, the debtor spouse clearly has some interest in the property, and Congress intended the Government's authority to reach any interest held by the debtor.

*Craft* resolved this conflict by invoking the Supremacy Clause. *See* 535 U.S. at 288-89. *Craft* held federal law need not be bound by the state's conclusion that certain property interests are beyond creditors' reach by virtue of the form of title. *Id.* If state law recognizes interests in the property–such as the rights to use, exclusion, and income–which are "property interests" under federal law, then the Government's power of garnishment reaches that property interest, however the state defines its title. *See id.* at 283-85. "In looking to state law, we must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them." *Id.* at 285.

*Craft* made it clear federal law may recognize a property right in circumstances which state law does not. 535 U.S. at 285. In addition, *Craft* suggests the converse is also true–that is, state law can recognize a property right which federal law does not. *See id.* Before its opinion in *Craft*, the Supreme Court had questioned in dicta whether an expectancy interest in property constitutes a property interest under federal law. *See United States v. Drye*, 528 U.S. 49, 60 n.7 (1999). In *Drye*, the Supreme Court questioned whether "an expectancy that has pecuniary value and is transferable under state law would fall within § 6321 prior to the time it ripens into a present estate."

10

528 U.S. at 60 n.7.[2] Noting its reservation in *Drye*, the Court in *Craft* expressly declined to resolve whether a right of survivorship–itself an expectancy interest–may be separately regarded a property interest under federal law. 535 U.S. at 285.

Though the Supreme Court has left the question open, it has not left lower courts without the tools necessary to conduct the appropriate analysis. Thus far, the Supreme Court has strongly suggested federal property interests are related to a party's right to control property. For example, *Craft* noted the delinquent taxpayer had a federal property interest in entireties property because of his rights to use, exclude, and derive income from the property. *Id.* at 283-84. In *Drye*, the Supreme Court held a taxpayer's option to receive an inheritance or disclaim it and thereby pass it along to another constituted control sufficient to render the option a federal right to property. 528 U.S. at 59-61. The Supreme Court stated "in determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' 'the important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" *Drye*, 528 U.S. 49, 61 (quoting *Morgan v. Commissioner*, 309 U.S. 78, 83 (1940) (alteration in original)); *see also Nat'l Bank of Commerce*, 472 U.S. at 723-27 (holding party's right to unilaterally control joint bank account constituted a federal property right to the entire contents of the account).

In contrast, the right of survivorship conveys no rights to control property. Under Tennessee law, the right of survivorship does not grant its holder the right to use property, derive income from property, or control the use of property. *See Weaver v. Harmrick*, 907 S.W.2d 385, 388 (Tenn. 1995) ("[A] third party . . . may own one spouse's right of survivorship without the consent of the

---

[2]Though only dicta, this statement stands in contrast to the dicta in *Rodgers* suggesting the opposite, *see* 461 U.S. at 698-99.

other spouse, but a third party may not own a present possessory interest in the property without the approval of both spouses.") (quoting *In re Arango*, 992 F.2d 611, 613-14 (6th Cir. 1993)). Rather, the right of survivorship grants only one substantive right: "[I]f one spouse dies, then the other spouse takes the property in fee simple absolute." *Id.*

That the right of survivorship is a future interest does not alone exclude it from the definition of property under federal law. Unlike other future interests, however, the right of survivorship does not carry any independent rights of control. For example, the holder of a remainder interest in property has the right to prevent waste, which grants him the ability to assert limited control over the current use of property to prevent conduct which would result in property's devaluation. *See Priest v. Priest*, 621 S.W.2d 577, 578 (Tenn. Ct. App. 1981) ("A remainderman unquestionably is entitled to relief from threatened waste which impinges upon or impairs his remainder interest."). No such right of control has been recognized in the holder of a right of survivorship. Nor need one be, as the right of survivorship is appended to the present interest in a tenancy by the entirety.

Moreover, the right of survivorship is significantly more limited than other future interests in property. First, it is limited by the requirement that its holder outlive his spouse. Second, unlike other future interests, the right of survivorship is not irrevocably granted to its holder at the time of its creation. To exercise the right, the tenancy by the entirety must remain intact until one spouse's death. At any time prior to death, the tenancy can be destroyed, either through joint conveyance, divorce, or other operation of law, whereby the right of survivorship is dissolved.

Typically, the law does not recognize a property interest in an expectancy, because the remote prospect the interest will ever vest. For example, a debtor's expected inheritance of land

12

owned by a still-living relative would not create a property right for federal tax or restitution purposes, even if the relative had promised the property in his will. *United States v. Murray*, 217 F.3d 59, 63 (1st Cir. 2000) (citing *Drye*, 528 U.S. at 60 n.7). This is so because the relative can at any time alter the inheritance. *Id.* The right of survivorship is similarly defeated by the unilateral actions of a third party: at any time, the debtor's spouse could destroy the tenancy by divorcing the debtor.

The tenuous nature of the right of survivorship is amplified when considered in the context of property other than real property. In this case, the dispute is over the value of Defendant's interest in funds currently held in an escrow account by BBI and funds expected to be disbursed into that account within the next thirty-six months. It is unlikely anyone would expect the assets currently in escrow would remain in that state until either Defendant or Mrs. Goddard's death. Almost assuredly, following resolution of this motion, the assets will be disbursed from the escrow account and either placed into another bank account or used to purchase other assets, either of which would transform the rights of Defendant and Mrs. Goddard. *See Laurain v. United States*, 579 F. Supp. 2d 991, 992 (M.D. Tenn. 2008) (noting Tennessee law allows either party to joint bank account held as a tenancy by the entirety to unilaterally withdraw all funds). In other words, it appears nearly certain Defendant's right of survivorship will never ripen over these assets. To refer to Defendant's life expectancy in valuing his right of survivorship, in the face of near certainty the right will never vest, ignores the true value of the right, which is essentially nothing.

The Supreme Court has instructed the nondebtor spouse is entitled to compensation for their individual interest, whatever its value happens to be. *See Rodgers*, 461 U.S. at 680; *Craft*, 535 U.S. at 288. The individual interest of a spouse is not the interest of a hypothetical spouse of a certain

13

age–it is the interest of the spouse who is standing before the Court. *See Barczyk*, 2010 WL 1068100, at *8. To reduce the analysis from a hypothetical and apply it to actual litigants, courts would require expert testimony on countless factors, including their physical and mental health, occupations, diet, exercise, preference for alcohol and tobacco, and other circumstances. *See id.* Even the stability of the couples' marriage would be relevant to a prediction on whether the right of survivorship would ever vest. *Id.* Any method which simply refers to a joint-life actuarial tables ignores all these factors save one–the party's age. Such reference does not provide an accurate forecast of whether the right of survivorship will vest in that spouse's lifetime, however.

Indeed, in the face of so much uncertainty, it is difficult to see how a right of survivorship could be valued at all. By simply valuing the shares of each spouse equally, however, these factors become irrelevant and the task of valuing the respective interests of co-tenants remains possible. *See Barry v. Woods*, 594 S.W.2d 687, 690 (Tenn. 1980) ("We recognize that the interest of a tenant by the entirety, in legal theory, does not consist of an undivided one-half interest in property. However, for practical purposes, and especially for tax purposes, it is frequently convenient to so consider it.").

The right of survivorship does have one substantive feature typical of rights considered property under federal law. In Tennessee, the right of survivorship is alienable. *Robinson v. Trousdale County*, 516 S.W.2d 626, 632 (Tenn. 1974); *In re Crim*, 81 S.W.3d 764, 770 (Tenn. 2002). As the Supreme Court remarked in *Craft*, alienability is "a right that is often in the bundle of property rights." 535 U.S. at 284. In addition, as a consequence of alienability, creditors of one spouse in Tennessee may reach that spouse's right of survivorship in satisfaction of a debt without the consent of the other spouse. *Weaver*, 907 S.W.2d at 388. As discussed above, the Ninth Circuit

14

relied in part upon this right in concluding the right of survivorship was included in the federal definition of property. 221 F.3d at 1117-18.

Neither of these factors indicate the right of survivorship is property under federal law, however. Alienability by itself is insufficient under the federal definition of property. Otherwise, the Supreme Court would not have doubted whether an expectancy interest, though alienable under state law, constitutes property under the federal tax lien statute. *See Drye*, 528 U.S. at 60 n.7. Moreover, that creditors can reach the right of survivorship under state law is an extension of alienability, not a unique component of the right of survivorship.

The dichotomy between the legal remedies available to a private creditor under state law and the Government under federal law may seem incongruent. This is not the case, however. Under state law, private creditors may not reach a spouse's present interest in entireties property, which is far more substantial than his right of survivorship. Because the Government is entitled to Defendant's share of the assets, it does not need the second-rate remedy of seizing his right of survivorship.

Accordingly, the Court concludes Defendant's interest for purposes of his restitution obligation is an equal one-half share of the BBI assets.

**D. Equitable Adjustment**

The Government contends Defendant's interest, and by extension its own interest, extends to 100% of the assets, regardless of what valuation method the Court chooses. The Government argues the equities favor ignoring Mrs. Goddard's interest in this case. The Government notes Mrs. Goddard received the benefit of Defendant's misapplication of bank funds, through such means as improvements, maintenance, and taxes paid on their jointly owned home, on which Mrs. Goddard

recently acquired a reverse mortgage (Court File No. 53 at 2 n.1). Seizing upon *Barczyk*'s observation that equities may drive the valuation of entireties assets in a case such as this, the Government argues the equities suggest Mrs. Goddard, having received some benefit from Defendant's crime, should likewise share in the repayment of that crime's victims (*id.*).

The Court concludes an equitable adjustment is not appropriate in this case. First, the Court doubts whether such adjustments are recognizable under state or federal law. The Government offers no legal authority in support of its argument, other than to note *Barczyk* leaves open the possibility in light of Michigan divorce law. *See* 2010 WL 1068100, at *10. It is not clear, however, whether *Barczyk* stretches as far as the Government argues. *Barczyk* was speaking in dicta about the possibility that a nondebtor spouse would deserve a greater-than-equal share of the entireties property, based upon equitable principles found in Michigan divorce law. *Id. Barczyk* does not suggest a nondebtor spouse could be left completely without compensation based on those equitable principles. Moreover, even if some equitable adjustment to the nondebtor spouse's interest would be appropriate, an adjustment which entirely consumes that spouse's interest seems to be a drastic remedy.

Second, even assuming such an equities adjustment is possible in cases such as these, the Government was unable to present sufficient evidence that this case warrants such an adjustment. The evidence shows that over the course of nearly thirty years, Mrs. Goddard and Defendant used cashier checks from Defendant's bank to purchase home improvements, pay their credit card bill, and make other payments. Approximately $150,000 in home improvements were purchased in this manner. The Government agrees, however, Mrs. Goddard had no reason to know the cashier checks were improperly acquired from the bank.

The Court finds this limited evidence insufficient. The Government offered no evidence showing the specific cashier's checks used for the home improvements were obtained illegally. The evidence only shows some portion of Defendant's illegal activity consisted of illegally obtaining cashier's checks. No evidence was offered to trace the illegal cashier's checks to specific purchases which benefitted Mrs. Goddard. On this record, the Court is able to conclude Mrs. Goddard received some unknown benefit as an incident to Defendant's wrongdoing. The Court has no information, however, from which to quantify this benefit. Moreover, that Mrs. Goddard, as an innocent spouse, would have received some incidental benefit is typical of any case involving an innocent spouse living in a joint household. Thus, this mere fact that Mrs. Goddard received some benefit alone does not justify departing from the default rule of dividing the entireties property equally.

Therefore, the Court concludes the Government is not entitled to an equitable adjustment in the share of the assets subject to the Court's order of restitution.

## III. CONCLUSION

For the above reasons, the Court will **GRANT IN PART** the Government's motion for entry of an order of garnishment.

An Order shall follow.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**